IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 05-205 |
| | ) | |
| DARNELL GREEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **OPINION**

Pending before the court is an emergency motion filed by Darnell Green ("Green") for immediate release from the sentence of imprisonment he is currently serving at FCI-Loretto (ECF No. 686). Green seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i), due to his susceptibility to the COVID-19 virus. Also pending is appointed counsel's motion to adopt Green's pro se motion (ECF No. 697).

The court's procedure for providing expedited legal assistance to incarcerated defendants for COVID-19 related motions (Administrative Order, 20-mc-629), although well-intentioned, did not work effectively in this case. Green's pro se motion was filed on May 11, 2020. Counsel was appointed to represent Green on May 14, 2020. The appointment order provided that "any counseled filing on behalf of defendant, or an advisement that no counseled filing would be forthcoming, was due within 14 days of the instant order (i.e., by May 28, 2020), at which time the Court would proceed to set any further briefing schedule and adjudicate the motion as filed" (ECF No. 689). Counsel filed two requests for extensions of time, which the court granted. On June 22, 2020, counsel filed a motion to adopt Green's pro se filing (ECF No. 697). In effect, there was a six-week delay in adjudicating Green's motion. The government filed an expedited

response opposing the motion on June 29, 2020 (ECF No. 699). The motion is now ripe for disposition.

Factual Background

In May 2006, Green pleaded guilty to count 1 of Crim. No. 05-205 and count 4 of Crim. No. 08-392, both of which charged him with conspiracy to distribute heroin. On September 1, 2006, Green was sentenced to 82 months of imprisonment, followed by 5 years of supervised release at each case, to concurrently run.

Green completed his original prison term and was released. On August 5, 2015, Green admitted numerous violations of the conditions of supervised release. The court revoked defendant's supervised release and sentenced Green to a term of imprisonment of 24 months to be followed by a new term of 3 years supervised release at each case, to concurrently run. Green completed his prison sentence and was released in April 2017.

In October 2017, the probation office filed a petition to revoke supervised release because Green was charged with selling heroin and possessing a firearm. On February 7, 2019, Green admitted the violations of the conditions of his supervised release. The court sentenced Green to a new term of imprisonment of 26 months at Crim. No. 05-205 and 24 months at Crim. No. 05-392, to concurrently run, with no supervised release to follow. Green's projected release date from BOP custody is September 25, 2020.[1]

Green has a wife and three children, with whom he would like to serve out the remainder of his sentence on home incarceration or begin supervised release. In the alternative, Green suggests that he be placed at the Renewal Center. Green contends that he is not violent and

---

[1] In his motion, Green states that he will be sent to the Renewal Center on August 27, 2020.

2

poses a low risk of recidivism. Green admits that his disciplinary record while in prison is less than stellar and that his PATTERN score (used to assess the likelihood of recidivism) is Minimum, High (ECF No. 686).

Green contends that he is particularly susceptible to COVID-19 based on the risk factors of being African-American, age (39), high blood pressure which requires daily medications, and mitral valve prolapse (a heart murmur). Green did not submit medical records.

The government maintains that Green poses a serious danger to the community, if released, which outweighs any incremental risk of contracting COVID-19 he faces if he remains detained at ACJ. Green was in Criminal History category IV for his original conviction in this case, based upon his lengthy criminal record. The government points out that Green has 10 felony convictions for drugs and guns since the age of 18.

The government argues that Green cannot be trusted to comply with the conditions of supervision if released. He committed Grade A violations of his conditions of supervision by committing additional crimes involving drugs and guns on two previous occasions. As a result of these violations, Green's supervised release was revoked twice by the court, and he was twice sentenced to additional periods of incarceration.

Legal Analysis

    1. Exhaustion of administrative remedies

As an initial matter, the court must consider whether Green's motion is ripe for consideration by the court. In *United States v. Raia*, No. 20-1033, 954 F.3d 594 (3d Cir., Apr. 2, 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies,

including allowing 30 days for the Bureau of Prisons ("BOP") to respond to a request for release.

Green represents that he satisfied his administrative remedies by making "multiple requests over the past 30 days through his Case Manager, Associate Warden and the Warden, to place him [on] home confinement to serve the remainder of his sentence, pursuant to the Cares Act of 2020." (ECF No. 686 at 3). The government contends that Green failed to demonstrate that he exhausted his administrative remedies, in numerous respects: (1) there is no indication that the BOP had 30 days to consider Green's requests; (2) Green's motion does not aver that his requests were based on COVID-19; and (3) Green did not appeal the denials to the BOP Regional Director's office and Office of General Counsel pursuant to 28 C.F.R. §§ 542.15 and 571.63. The government urges that Green's motion should be denied as premature.

In *Raia*, the court of appeals instructed that "strict compliance" with the exhaustion require is of critical importance during the COVID-19 pandemic. *Raia*, 954 F.3d at 597. The government is correct that Green did not demonstrate "strict compliance" with the BOP's administrative remedies, for the reasons articulated above. Accordingly, his motion must be denied.

The court will, nevertheless, address the substance of Green's arguments, for two reasons. First, in light of the delay while waiting for appointed counsel to act on Green's behalf, the BOP has now had more than 30 days to consider Green's requests for release. Second, even if Green did exhaust his administrative remedies, the court would deny his request for release on the merits.

2. Consideration of the § 3553(a) factors and "extraordinary and compelling reasons"

Green argues that because of his risk factors and the fact that he has completed most of his sentence, his personal risk from the virus outweighs society's interest in his continued

detention. The government argues that the danger to the community from his release warrants continued detention. Green faces a difficult burden. The court must first consider the § 3553(a) sentencing factors and Green must demonstrate that "extraordinary and compelling reasons" exist. U.S.S.G. §1B1.13.

Congress delegated to the United States Sentencing Commission (the "Commission") the responsibility for defining the term "extraordinary and compelling reasons." *See* 28 U.S.C. §994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18").

The Commission promulgated its policy statement[2] at U.S.S.G. §1B1.13, providing that a court, after considering the § 3553(a) factors, may reduce a term of imprisonment if it determines that--

(1)    (A) Extraordinary and compelling reasons warrant the reduction; or
        (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

The court acknowledges that in the First Step Act, Congress gave courts authority to modify a sentence to home confinement based on a defendant's motion for compassionate

---

[2] The court notes that the Sentencing Guidelines have not been updated to reflect the First Step Act, which provides that incarcerated defendants may file motions for compassionate release for disposition by the court. Pub. L. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.

release.³  Pursuant to § 1B1.13, the court must first consider the § 3553(a) factors before reducing Green's sentence.  U.S.S.G. §1B1.13.  Upon review of those factors, as articulated most recently at the supervised release revocation hearing in February 2019, the court concludes that a sentence reduction is not appropriate

In revoking his supervised release and again imposing a prison sentence, the court noted Green's extensive criminal history and drug abuse history and the need to protect the public from further crimes by him.  The court determined that 26 months in prison was sufficient, but no greater than necessary, to satisfy the statutory sentencing purposes.  The only new circumstances cited in Green's motion (the length of time he has served and his concerns about the COVID-19 pandemic) do not justify a reduction in his sentence.  Guns and drugs are bad combinations that pose serious dangers to the community.  Green has demonstrated a history of involvement with drugs and guns while on supervised release.  He has not proven amenable to supervision and has not complied with conditions of release in the past.  There is no indication that he would do so in the future.

Even if the § 3553(a) sentencing factors favored release, Green would need to demonstrate "extraordinary and compelling" reasons for compassionate release.  The Commission provided its definition of the term "extraordinary and compelling reasons" in U.S.S.G. §1B1.13, Application Note 1, which provides, in its entirety:

> 1. **Extraordinary and Compelling Reasons**.--Provided the defendant meets the requirements of subdivision (2) [*i.e., danger to the community*], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—

---

³ Previously, such motions could be filed only by the Director of the BOP.  U.S.S.G. § 1B1.13.

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is--
          (I) suffering from a serious physical or medical condition,
          (II) suffering from a serious functional or cognitive impairment, or
          (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances**.--
      (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons**.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Application Note 2 explains that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."[4] Application Note 3 provides that rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason to reduce a sentence.

---

[4] Of course, the COVID-19 pandemic was unforeseen when Green was sentenced.

Green did not demonstrate "extraordinary and compelling reasons" for release, as defined in the Sentencing Guidelines. He does not have a terminal illness. He does not have a medical condition that substantially diminishes his ability to provide self-care within a correctional environment. At age 39, he does not qualify under the age provisions. He did not argue that his family circumstances warrant a sentence reduction.

The catchall "other reasons" in subsection (D) do not justify Green's release because he expresses only a generalized fear of contracting COVID-19.[5] Green did not demonstrate an "extraordinary and compelling" susceptibility or risk of contracting COVID-19. Green asserts that his age (39) is a risk factor. The court takes judicial notice of recent local statistics reflecting that COVID-19 appears to be correlated with advanced age. Allegheny County reports that as of June 23, 2020, 81% of deaths from COVID-19 were over age 70; and 13% were ages 60-69. https://www.alleghenycounty.us/Health-Department/Resources/COVID-19/COVID-19.aspx (last visited June 23, 2020). There were zero (0) deaths from COVID-19 for people ages 30-39. Allegheny County reports that 14% of positive cases and 6% of hospitalizations involved people ages 30-39. *Id.* Current data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths. It is unclear, however,

---

[5] There is a dispute about whether a court may independently decide whether extraordinary and compelling reasons exist under the First Step Act or whether Congress delegated sole authority to determine additional reasons for compassionate release to BOP, not the courts. *Compare United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020), *with United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019), *appeal dismissed*, No. 19-13239-F, 2019 WL 6273393 (11th Cir. Oct. 8, 2019). The court need not resolve this dispute because Green is not entitled to release under either approach. *See* extended analysis in *United States v. Cook*, No. CR 17-20, 2020 WL 1974924, at *6 (W.D. Pa. Apr. 24, 2020) (court "need not decide whether it is bound by the commentary to § 1B1.13 or it has independent discretion to determine whether other 'extraordinary and compelling' reasons exist").

whether race is an independent risk factor or whether the adverse outcomes are caused by other factors such as living conditions (such as population density), work conditions (including service in essential industries), lack of access to health care or the prevalence of other underlying medical conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited June 23, 2020). The court is not aware of evidence that high blood pressure that is being stabilized and controlled by medication or a heart murmur places one at greater risk of COVID-19.

In *Raia*, the court of appeals cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 954 F.3d at 597. It appears that the BOP is actively monitoring and testing inmates and removing and quarantining those who show symptoms of COVID-19. In sum, on this record Green's susceptibility to COVID-19 is not extraordinary and compelling.

The court recognizes the potential for Green's exposure to the COVID-19 virus at FCI-Loretto.[6] Unfortunately, that potential exists anywhere in the community. The BOP, along with this court and other local authorities, is taking the necessary steps and precautions to help stop the spread of the COVID-19 virus, including those individuals detained in prison. Additionally, there is no indication that Green's medical needs are not being addressed; in fact, he acknowledges receiving his daily high blood pressure medication. The court is sympathetic to his concerns about complications caused by COVID-19 and possible exposure to affected individuals. Speculation concerning possible future conditions, however, does not constitute a "compelling reason" for release. In other words, his current arguments for release do not

---

[6] As of June 9, 2020, there were no positive tests for COVID-19 at FCI-Loretto. https://abcnews.go.com/Politics/tested-federal-inmates-positive-coronavirus/story?id=71275461 (last visited June 30, 2020).

outweigh the factors considered by the court in imposing his original sentence, most particularly, the danger to the community posed by his release.

Conclusion

In accordance with the foregoing, appointed counsel's motion to adopt Green's pro se motion (ECF No. 697) will be GRANTED and Green's motion for compassionate release (ECF No. 686) will be DENIED.

An appropriate order will be entered.

Dated:  July 6, 2020.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge
